UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TERRY SKIDGEL, )<br>                )<br>        *Plaintiff*    )<br>                )<br>v.                  )    No. 1:14-cv-181-JHR<br>                )<br>CAROLYN W. COLVIN,    )<br>*Acting Commissioner of Social Security,*  )<br>                )<br>       *Defendant*   )| |

### *MEMORANDUM DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the administrative law judge erroneously relied on a residual functional capacity ("RFC") assessment by agency nonexamining consultant Benjamin Weinberg, M.D., that did not purport to evaluate his condition for the entire relevant period. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 12) at 6-7.[2] I find no error and, accordingly, affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 13, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 17.

[2] In his statement of errors, the plaintiff also argued that the administrative law judge had erred in evaluating the RFC assessment of treating source B. Thom Hieronymus, ARNP. *See* Statement of Errors at 7-9. However, at oral argument, his counsel conceded that, as noted by the commissioner, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 14) at 10, any error was harmless in view of a vocational expert's testimony at hearing that a person with the restrictions set forth by Hieronymus could perform one of the jobs on which the administrative law judge relied, that of furniture rental consultant.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, Finding 1, Record at 13; that he had a severe impairment of a history of right clavicular fracture with revascularization, Finding 3, *id.*; that he had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could not engage in forceful pushing or pulling with his right upper extremity, could not climb ladders, ropes, or scaffolds, could occasionally crawl, could occasionally reach overhead with his right arm, could not carry anything on or above his right shoulder, needed to avoid unprotected heights, and could not use vibrating tools with his right upper extremity, Finding 5, *id.* at 14; that, considering his age (41 years old, defined as a younger individual, on his alleged disability onset date, January 16, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 16; and that he, therefore, had not been disabled from January 16, 2010, through the date of the decision, March 4, 2013, Finding 11, *id.* at 17. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

In January 2010, the plaintiff was involved in an accident in which he was thrown from a snowmobile, fracturing his right clavicle. *See* Record at 359, 417. Initially, "it was decided to treat this in a more conservative fashion nonsurgically." *Id*. at 417. However, the plaintiff began to complain of increasing discomfort, including numbness, tingling, and burning in his right hand. *See id*. He was diagnosed with a subclavian artery dissection that required revascularization, which was accomplished on March 16, 2010, using a vein graft from his left leg. *See id*. at 395, 400. The revascularization was successful, but he continued to complain of pain over his shoulder, which treating physician F. Parke Oldenburg ascribed to "clavicle nonunion" – that is, the failure of the clavicle to heal on its own. *See id*. at 395-96, 400, 402.

On August 19, 2010, Dr. Oldenburg performed a clavicle nonunion repair; however, this was complicated by hardware failure. *See id*. at 376. As of October 12, 2010, he expressed hope "that despite the failure of the hardware that he still goes on [to] heal." *Id*. As of November 29, 2010, he advised that, despite the risk of continuing nonunion of the clavicle, the benefits of removing the implant at that point were outweighed by the risks. *See id*. at 369. However, on

February 22, 2011, after Dr. Oldenburg noted that the plaintiff's clavicle fracture still had not healed, the plaintiff elected to proceed with further surgery. *See id*. at 490-91. On that date the plaintiff complained of continued pain in his right clavicle, stating that he had tried to return to work as a carpenter but could not do so due to movement in his shoulder, as well as pain in his shoulder with palpation and activities and paresthesias in his hand from the initial trauma. *See id*.

On March 9, 2011, Dr. Oldenburg performed a surgical repair of the clavicle using fixation and a bone graft from the plaintiff's left femur. *See id*. at 474-75, 491. As of May 2, 2011, the plaintiff told Dr. Oldenburg that he was doing very well and that the locking and catching previously present in his right shoulder was gone. *See id*. at 465. He was noted on examination to continue to have some paresthesias consistent with his examination following the snowmobile accident. *See id*. As of June 22, 2011, the plaintiff noted further improvement, with "almost no pain in his arm." *Id*. at 461. Dr. Oldenburg stated: "I allow[ed] [the plaintiff] to slowly advance his weightbearing over the next 6 weeks[,]" noting that "[w]e allowed him to return to work fully at the 6-week interval[,]" and "[h]e is in agreement with this plan." *Id*. at 462.

As the plaintiff observes, *see* Statement of Errors at 2-6, the record contains several medical opinions from different points along the continuum of his recovery:

1. On May 26, 2010, agency nonexamining consultant Lawrence P. Johnson, M.D., found no physical limitations on the basis that, in the wake of the successful revascularization, the plaintiff's shoulder impairment "[s]hould not meet [the] duration requirement." Record at 368; *see also, e.g.,* 20 C.F.R. §§ 404.1509, 416.909 ("Unless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

2. On March 10, 2011, agency nonexamining consultant Antonio Medina, M.D., found the plaintiff limited to lifting and/or carrying 10 pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, with a manipulative limitation in the form of only occasional handling and above-shoulder reaching with his right dominant hand/arm. *See* Record at 451, 453, 459. In an addendum dated April 5, 2011, Dr. Medina noted:

> Additional information that [the plaintiff] underwent repair of non-union of the right clavicle, dominant side on 3-9-2011. The RFC provided [is] from AOD [alleged onset date of disability, January 16, 2010] to 6 months from surgery (10-2011). No limitation/impairment once union is demonstrated by x-ray at that time.

*Id*. at 460.

3. On September 16, 2011, in an RFC assessment that he indicated was a "Current Assessment[,]" Record at 69-70, Dr. Weinberg deemed the plaintiff limited to lifting and/or carrying 25 pounds occasionally and 10 pounds frequently, standing and/or walking for more than six hours on a sustained basis in an eight-hour workday, sitting for more than six hours on a sustained basis in an eight-hour workday, and limited in pushing and/or pulling with his right upper extremity as a result of "[p]rolonged recovery from fracture right clavicle, non-union, twice repaired[,]" *id*. at 70. He further limited the plaintiff to climbing ladders/ropes/scaffolds occasionally, crawling occasionally, and reaching overhead occasionally with his right arm, with a need to avoid concentrated exposure to hazards, specifically, heights. *See id*. at 70-72.

4. On January 19, 2012, treating physician's assistant Kent McNeer, PA-C, a vascular surgery specialist, indicated that the plaintiff had not "been released to return to work or resume normal activities[,]" that he had right arm weakness, and that restrictions were in place through March 3, 2012, when he was expected to recover. *Id*. at 568.

5. On January 11, 2013, treating nurse practitioner Hieronymus assessed a number of restrictions, including limitations to lifting/carrying up to 25 pounds occasionally and 10 pounds frequently and standing and/or walking for less than two hours in an eight-hour workday, a need to periodically alternate sitting and standing to relieve pain or discomfort, limitations in pushing/pulling with his upper extremities, and a restriction to only occasionally reaching, handling, and feeling and frequently fingering. *See id*. at 576-78.

The administrative law judge gave considerable weight to the Weinberg opinion, which he found consistent with the evidence as a whole. *See id*. at 15. In light of the updated medical evidence, he gave little to no weight to the Johnson opinion that the plaintiff had no severe impairment that would last for 12 months and to the Medina opinion that he could not lift more than 10 pounds. *See id*. at 16. He gave little weight to the Hieronymus opinion "as it describe[d] limitations on activities such as sitting, standing, walking, seeing and hearing that [were] not reasonably related to the [plaintiff's] severe impairment." *Id*. (citation omitted).

The plaintiff complains that, in relying on the Weinberg opinion, the administrative law judge overlooked the fact that it was a current assessment. *See* Statement of Errors at 6 ("While the ALJ [administrative law judge] could choose among the conflicting opinions for the period from September 20, 2011 forward, rejecting the opinions of PA McNeer and NP Hieronym[]us and instead adopting the opinion of Dr. Weinberg, he simply ignored the fact that Dr. Weinberg's opinion was a current opinion as of September 16, 2011, some 20 months after the date of onset.").

He asserts that, for the earlier period, the only opinion of record was that of Dr. Medina, who "limited [the plaintiff] to sedentary work with significant further restrictions." *Id*. He argues that, given the temporal limitation of the Weinberg opinion, the administrative law judge, in effect, made an impermissible lay assessment of the medical evidence in determining that the Weinberg

opinion accurately reflected the plaintiff's capacities at all relevant times. *See id.* at 6-7. He notes that, in a letter to the administrative law judge, his counsel raised the issue of a "closed period." *Id.* at 7 n.4; Record at 342-43 n.2; *Bowman v. Astrue*, Civil No. 09-161-B-W, 2009 WL 5216060, at *2 n.3 (D. Me. Dec. 29, 2009) (rec. dec., *aff'd* Jan. 19, 2010) ("In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision.") (citation and internal quotation marks omitted).

In her opposition and through counsel at oral argument, the commissioner contended that, despite its nomenclature, a "Current Assessment" does not typically assess a claimant's condition only as of the time a consultant renders his or her opinion but, rather, from the time of the claimant's alleged onset date of disability forward. *See, e.g.*, Opposition at 7. She asserted that, if an agency nonexamining consultant meant to address a claimant's condition for a different time period, he or she would check a box so indicating and set forth the discrete period for which the assessment was made. *See, e.g., id.* The commissioner cited no authority for this proposition. Nonetheless, given the importance of a correct interpretation of the ubiquitous form at issue, I undertook research, which tended to corroborate the commissioner's position. Social Security Administration Program Operations Manual System ("POMS") § DI 24510.050, pertaining to "Completion of the Physical RFC Assessment Form," provides, in relevant part: "Use the 'Current Evaluation' block in cases when the evaluation is for AOD [alleged onset date] through present and the duration requirement has been met."

From all that appears, Dr. Weinberg did just that. He summarized records dating back to the plaintiff's alleged onset date in January 2010. *See* Record at 67-68. And he explained that he assessed limitations as a result of the plaintiff's "[p]rolonged recovery from fracture right clavicle,

non-union, twice repaired[,]" *id*. at 70-72, despite also noting that the plaintiff's orthopedic surgeon had released him to regular work on August 3, 2011, "without limitations[,]" *id*. at 69.[3]

In addition, as the commissioner points out, *see* Opposition at 4-6, the administrative law judge considered the plaintiff's condition from his alleged onset date forward in deeming the Weinberg opinion consistent with the medical evidence of record.  For example, he noted that vascular clinic records dated November 2010 showed that the plaintiff reported "fairly minimal difficulty using his right hand" and Eastern Maine Medical records from that month also indicated that his pain had improved "significantly" following surgery in August 2010 to repair the nonunion of his clavicle fracture.  Record at 15 (citations and internal quotation marks omitted).  He further observed that the plaintiff reported in November 2010 that he had gone hunting "using his other arm" and was trying find a light-duty job, in May 2011 that he was "doing very well[,]" and in June 2011 that he was "doing really well" and had "almost no pain in his arm" and some improvement in his paresthesias.  *Id*. (citations and internal quotation marks omitted).

He noted that the objective medical findings, as well, did not refute the notion that the plaintiff could work within the assessed limitations.  *See id*. (observing that the plaintiff was noted in November 2010 to have some paresthesias in his right hand but intact upper extremity strength and good range of motion in his shoulder and elbow, examination in June 2011 revealed "very good" range of shoulder motion and intact strength and sensation in his right upper extremity, and in May 2012, the plaintiff demonstrated good bilateral hand strength and no right shoulder pain.) (citations and internal quotation marks omitted).

---

[3] The plaintiff complains that Dr. Weinberg misread Dr. Oldenburg's note in stating that Dr. Oldenburg prospectively released him to work without restrictions as of August 3, 2011.  *See* Statement of Errors at 4-5.  However, as the commissioner rejoins, *see* Opposition at 3 n.2, the plaintiff overlooks a later note, dated June 22, 2011, in which Dr. Oldenburg stated, "We allowed [the plaintiff] to return to work fully at the 6-week time interval.  He is in agreement with this plan[,]" Record at 462.

The administrative law judge, accordingly, committed no error in evaluating conflicting medical opinions and choosing to accord significant weight to that of Dr. Weinberg for the entire period at issue.

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 14th day of April, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge